UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATTERN ENERGY GROUP LP,

Plaintiff,

-against-

MICHAEL PERILLO and KELLY PERILLO,

Defendants.

Case No. 1:25-cv-00785 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Pattern Energy Group LP ("Plaintiff" or "Pattern") commenced this action in New York state court against Defendants Michael Perillo and Kelly Perillo (together, the "Defendants"). Now pending before this Court are Plaintiff's motion to remand this action to the Supreme Court of New York, County of New York, Dkt. 20, and Defendants' motion to stay the action pending arbitration, Dkt. 15. For the following reasons, Plaintiff's motion to remand is GRANTED and Defendants' motion to stay is DENIED as MOOT.

## BACKGROUND[1]

Pattern is a Delaware limited partnership with its principal place of business in California. Dkt. 1-1 ("Compl.") ¶ 8. Defendants are domiciled in Utah. Dkt. 7 ¶ 13; *see also* Compl. ¶ 7. Pattern is an energy business that "develops, constructs, owns, and operates wind, solar, transmission, and energy storage projects." Compl. ¶ 11. In early 2022, Pattern, "[s]eeking to grow the solar distributed generation sector of its business," contacted Defendant Michael Perillo regarding a potential sale of Dynamic Energy Solutions, LLC ("Dynamic"), "a solar energy solutions provider" owned by Defendants. Compl. ¶ 14; *see*

---

[1] The facts described herein "derive principally from the complaint, the notice of removal, and the briefing on the instant motion seeking remand." *Westchester County v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 217 (S.D.N.Y. 2024) (quoting *Ohno Enters. v. Allen*, No. 15-cv-06675 (KAM) (RER), 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016)).

Compl. ¶ 1.  On June 27, 2022, the parties executed a Membership Interest Purchase Agreement (the "MIPA"), whereby Pattern purchased Defendants' interest in Dynamic. Compl. ¶ 2.

Plaintiff brought suit in the Supreme Court of New York, New York County, asserting causes of action for (i) fraudulent inducement based on pre-contractual misrepresentations; (ii) fraud based on postcontractual misrepresentations; and (iii) breach of contract based on Defendants' violations of the MIPA's representations, warranties, and covenants.  *See generally* Compl. ¶¶ 68-109.  Defendants were served on January 13, 2025, Dkt. 1 ¶ 4, and timely removed the case to federal court on January 27, 2025, *see generally* Dkt. 1; 28 U.S.C. § 1446(b).  In their initial notice of removal, Defendants asserted that the Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the Defendants were citizens of Utah, and Pattern had multiple U.S. citizenships but was not a citizen of Utah.  *See* Dkt. 1 ¶¶ 6-7.

On January 29, 2025, Pattern's counsel sent an email to the Defendants, stating that the Notice of Removal was deficient because it omitted, among other things, that "one of Plaintiff's indirect members is the Canada Pension Investment Board."  Dkt. 7-2 at 2. Pattern's counsel asserted that because Pattern is a "limited partnership with limited partners and members of those limited partners that are citizens of both U.S. states and foreign states, there is no diversity jurisdiction."  Dkt. 7-2 at 1.  On January 30, 2025, Defendants filed an amended notice of removal, now asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  Dkt. 7 ¶¶ 10-11.  Specifically, Defendants assert that diversity jurisdiction is satisfied because Defendants "are citizens of Utah, and Pattern is a citizen of multiple states and Canada, but not a citizen of Utah."  Dkt. 7 ¶ 11.  In relevant part, the amended notice of removal provides that Pattern's general partner is Pattern Energy Group GP LLC, which is a Delaware limited liability company ("LLC") with members that are citizens of New York,

California, Texas, and Canada.  Dkt. 7 ¶ 17.  The amended notice further represents that

Pattern's limited partners are citizens of New York, California, Texas, Washington, and

Canada.  Dkt. 7 ¶ 18.[2]

Pattern subsequently moved to remand to state court on February 18, 2025.  Dkt. 20

("Mot.").  On March 4, 2025, Defendants filed their opposition to the motion to remand, Dkt.

29 ("Opp."), and on March 11, 2025, Pattern filed a reply, Dkt. 33 ("Reply").  Defendants

have also filed a motion to stay these proceedings pending the outcome of ongoing arbitration

between the parties, Dkt. 11, and the motion is fully briefed, *see* Dkts. 25, 27.

## LEGAL STANDARD

"Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal

judicial power."  *Windward Bora LLC v. Browne*, 110 F.4th 120, 125 (2d Cir. 2024)

(alteration adopted) (quoting *Curley v. Brignoli, Curley & Roberts Assocs*., 915 F.2d 81, 83

(2d Cir. 1990)).  "[B]ecause 'federal courts are courts of limited jurisdiction and, as such, lack

the power to disregard such limits as have been imposed by the Constitution or Congress,' it is

'well established . . . that federal jurisdiction is not to be extended beyond the scope permitted

by a strict construction of the statute upon which it rests.'"  *N.Y. Metro. Reg'l Ctr., L.P. II v.*

*Mammoet USA Holding, Inc*., 552 F. Supp. 3d 451, 454 (S.D.N.Y. Aug. 6, 2021) (omission in

original) (first quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013);

and then quoting *Kresberg v. Int'l Paper Co*., 149 F.2d 911, 913 (2d Cir. 1945)).  "Any

doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts

---

[2] Pattern further clarifies in its moving papers that "11701568 Canada Inc. ('Canada, Inc.') is
a member of Pattern's general partner, Pattern Energy Group GP LLC, and an indirect limited
partner of one of the owners of one of Pattern's limited partners, Pattern Energy Group LLC."
Mot. at 3.  Canada, Inc. is a "Canadian Corporation with its principal place of business in
Toronto, Canada."  *Id.*

construe the removal statute narrowly.'" *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (quoting *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

It is undisputed that the only basis for federal subject matter jurisdiction in this case is diversity of citizenship pursuant to 28 U.S.C. § 1332. In relevant part, section 1332(a) provides that federal district courts shall have original jurisdiction of civil actions where the matter in controversy exceeds $75,000 and "is between": (1) "citizens of different States"; (2) "citizens of a State and citizens or subjects of a foreign state"; and (3) "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a). "[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Moreover, "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (first citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); and then citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806))).

## DISCUSSION

### I.    Diversity Jurisdiction

Defendants' sole theory of jurisdiction rests on 28 U.S.C. § 1332(a)(2): Defendants contend that, "because Pattern is not a Utah citizen, and because the Perillos are not foreign citizens, jurisdiction is proper under § 1332(a)(2)." Opp. at 2. The Court will examine this ground for removal. However, because "[f]ederal courts have a duty to inquire into their subject matter jurisdiction sua sponte," *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756

F.3d 151, 161 (2d Cir. 2014), the Court also considers whether any of the other jurisdictional hooks set forth in 28 U.S.C. § 1332 apply to the current action.

Turning as an initial matter to the citizenship of the respective parties, Defendants are domiciled in Utah, and are therefore citizens of Utah. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile."). Since Pattern is a limited partnership, its citizenship depends on the citizenship of each of its general and limited partners. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000). Where, as here, the limited partnership's partners are themselves unincorporated entities (such as limited partnerships or limited liability companies), the court must examine the citizenship of each of their members in turn. *See Bayerische Landesbank*, *N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *see also Wheels Up Partners LLC v. Exclusive Jets, LLC*, No. 23-cv-08077 (VSB), 2025 WL 950805, at *2 (S.D.N.Y. Mar. 28, 2025) ("The citizenship of the members of an LLC is traced all the way through — that is, when a member of an LLC is itself an LLC, the citizenship of the members of that LLC are relevant for diversity purposes, and so on." (citation omitted)). Pattern, by virtue of the citizenship of its limited and general partners, therefore holds dual citizenship: it is a citizen of various U.S. states, including New York, California, Texas, and Washington, and a citizen of a foreign state, Canada. *See* Dkt. 7 ¶¶ 17, 18; *see also* Opp. at 3.

The question now before the Court is thus whether section 1332(a) confers jurisdiction where there is a limited partnership with dual United States and foreign citizenship on one side of the action and parties with U.S. citizenship on the other side. For the reasons set forth below, the Court finds it does not.

### A.  Diversity Jurisdiction Under Section 1332(a)(2)

As noted above, Defendants raise a sole ground, 28 U.S.C. § 1332(a)(2), for removal to federal court, asserting that "because the Perillos are citizens of a different state (Utah) than Pattern (New York, California, Texas, Washington, and Canada)," diversity jurisdiction is satisfied.  Dkt. 7 ¶ 20.  Defendants' theory of jurisdiction is foreclosed, however, by the plain language of section 1332(a)(2): courts shall have jurisdiction over actions "between" "citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).  This creates a problem for Pattern, which is not solely a citizen of a "foreign state," but is also a citizen of numerous U.S. states, including Texas, California, Washington, and New York.  "Section 1332(a)(2) . . . does not apply where, as here, there are citizens of a state on both sides of the case."  *Metro. Reg'l Ctr.*, 552 F. Supp. 3d at 458.  Therefore, Pattern's "United States citizenship destroy[s] complete diversity under § 1332(a)(2)."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989); *see also id.* at 828 (observing that "[s]ubsection 1332(a)(2) . . . confers jurisdiction in the District Court when a citizen of a State sues aliens only," and therefore "could not be satisfied because [the individual defendant] is a United States citizen"); *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1056 (9th Cir. 2016) ("Because there are American citizens on both sides of the case, jurisdiction cannot be grounded in § 1332(a)(2)).").

Defendants urge the Court to construe 28 U.S.C. § 1332(a)(2) more broadly, asserting that it is "a longstanding rule" in the Second Circuit "that diversity is lacking under § 1332(a)(2)" in "only" two instances: (1) where "the only parties are foreign entities," or (2) where "on one side there are citizens and aliens and on the opposite side there are only aliens."  Opp. at 2 (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)).  The Court declines to divine any such "rule" from the Second

Circuit's precedents. In *Universal Licensing Corp.*, the Second Circuit acknowledged that "diversity is lacking" within the meaning of sections 1332(a)(2) and (a)(3) in the above-enumerated instances, but nowhere indicated that those were the "only" instances in which jurisdiction would not lie under section 1332(a)(2). The Second Circuit had no occasion to address whether diversity jurisdiction would exist over a dispute between a limited partnership with dual U.S. and foreign citizenship on one side, and U.S. citizens on the other: *Universal Licensing Corp.* involved a suit between foreign parties only (individual Italian defendants versus a Korean corporation). *See* 293 F.3d at 580. Defendants commit a logical fallacy in interpreting *Universal Licensing Corp.* so narrowly: just because there is not diversity in the aforementioned circumstances does not mean that the inverse is true — in other words, just because the parties fall outside of the examples expressly identified by *Universal Licensing Corp.*, does not mean that they are automatically diverse. Defendants' other cited authorities fare no better. *IGY Ocean Bay Properties LTD. v. Ocean Bay Properties I LTD.* and *F5 Capital v. Pappas* merely restate *Universal Licensing Corp.*'s observation that "[d]iversity is lacking within the meaning of [section 1332(a)(2)] where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *F5 Cap. v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017) (quoting *Universal Licensing Corp.*, 293 F.3d at 581); *accord IGY Ocean Bay Props., LTD. v. Ocean Bay Properties I LTD.*, 534 F. Supp. 2d 446, 448 (S.D.N.Y. 2008) (citing *Universal Licensing Corp.*, 293 F.3d at 580-81). They do not, however, adopt Defendants' limiting language or otherwise suggest that *Universal Licensing Corp.* set forth an exhaustive list of the circumstances in which jurisdiction is lacking under section 1332(a)(2).[3]

---

[3] Moreover, *F5 Capital* clearly falls within one of the two scenarios in which *Universal Licensing Corp.* deemed diversity lacking: *F5 Capital* involved U.S. citizens and foreign

Defendants' reliance on the Second Circuit's recent decision in *Windward Bora LLC v. Browne*, 110 F.4th 120 (2d Cir. 2024), is likewise misplaced. Defendants represent that "the Second Circuit recently held that diversity jurisdiction under § 1332(a)(2) existed in a case where the plaintiff was a citizen of Morocco and Florida, while the defendants were citizens of New York." Opp. at 7. However, as Pattern observes, this "misrepresents the facts and holding of *Windward*." Reply at 2. The question before the Second Circuit in *Windward* was whether the court should consider the state domicile of a limited liability company's permanent resident members when assessing diversity jurisdiction. *See* 110 F.4th at 123. The plaintiff in that case was an LLC whose sole member was a citizen of Morocco and a lawful permanent resident in the United States; the legal permanent resident's state of domicile was, however, contested. *Id*. at 124. The defendants were U.S. citizens domiciled in New York. *Id.* At issue in *Windward* was section 1332(a)(2)'s carveout precluding jurisdiction over "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." *Id.* at 127 (quoting 28 U.S.C. § 1332(a)(2)). In light of this language, and given the structure and legal status of unincorporated associations, the Second Circuit held that a legal permanent resident member's state domicile was still relevant to the jurisdiction analysis and therefore

citizens on one side of the case, and only a foreign entity on the opposite side. 856 F.3d at 75. The court therefore had no reason to opine as to additional situations, such as the one present here. As with *F5 Capital*, *IGY Ocean Bay* likewise did not address the configuration of parties at issue in the instance case. But while factually distinguishable, in reaching its holding, *IGY Ocean Bay* underscored that, for corporate entities with dual citizenship, "diversity jurisdiction must be determined by looking at *both* of their citizenships." *Id*. at 449 (emphasis added). The court cautioned that "[a]llowing parties with dual citizenship to unilaterally choose which citizenship to rely upon for any given litigation would greatly increase uncertainty regarding subject matter jurisdiction, would expand rather than narrow the diversity jurisdiction of the federal courts . . . and would encourage forum-shopping." *Id.* This cautionary note applies with equal force here.

should be attributed to the larger LLC.  *Id*. at 129 ("In sum, we apply a simple rule when determining whether there is diversity jurisdiction over a case involving an unincorporated association with lawful permanent resident members: if there would be no jurisdiction if the case involved only an unincorporated association's permanent resident members but not the association itself, there can be no jurisdiction in the case involving the unincorporated association.").  The Court nevertheless found that the legal permanent resident member was domiciled in Florida, not New York, and therefore section 1332(a)(2)'s carveout did not apply.  *Id.*  With the question of the legal permanent resident member's state of domicile resolved, the Second Circuit's jurisdictional analysis was a straightforward one: the dispute involved on one side of the ledger a Moroccan citizen domiciled in Florida, and on the other, U.S. citizens domiciled in New York, and therefore fit comfortably within 28 U.S.C. 1332(a)(2)'s statutory language.  *Id.*

Not only are there no lawful permanent residents at issue in the present case, Defendants' characterization of *Windward* conflates a lawful permanent resident's "domicile" with his or her "citizenship."  A review of section 1332(a)(2)'s legislative history makes clear, however, that those are separate and distinct concepts.  As *Windward* explains, in 1988, Congress amended section 1332 to foreclose diversity jurisdiction in cases between U.S. citizens and permanent residents domiciled in the same state by "adding language stating that 'an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.'"  110 F.4th at 126 (quoting Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 (1988)).  However, this change created an anomalous result of its own: the statute could be interpreted "as *expanding* jurisdiction to controversies between permanent residents and non-resident foreign citizens."  *Id*. at 127 (citing *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir.

2020) (per curiam)).  To remedy this outcome, Congress again amended section 1332 in 2011, removing the language inserted in 1988 and inserting language denying federal jurisdiction over "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the U.S. and are domiciled in the same state." *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 101, 125 Stat. 758, 758; *see also Windward*, 110 F.4th at 127 (overviewing 2011 amendment to 28 U.S.C. § 1332).  As a result of the 2011 amendment, "under the current version of section 1332(a)(2) a lawful permanent resident is no longer 'deemed a citizen of the State in which [he] is domiciled' but is instead a 'citizen[] or subject[] of a foreign state.'" *Windward*, 110 F.4th 127-28 (alterations in original) (footnote omitted) (first quoting § 203(a), 102 Stat. at 4646; and then citing § 101, 125 Stat. at 758).  For that reason, the legal permanent resident member in *Windward*, although domiciled in Florida, was not in fact a citizen of Florida.  Therefore, the only citizenship imputed to the Plaintiff LLC was the permanent resident's international citizenship (although, as noted above, the member's domicile was still relevant to the jurisdictional analysis).

Defendants argue that adopting Pattern's interpretation of 28 U.S.C. § 1332(a)(2) "would render meaningless the longstanding recognition that one side of a dispute may permissibly include 'citizens and aliens,' as the Court in *Grupo* recognized, provided there are not aliens or identical state citizenships on the opposite as well."  Opp. at 10.  Defendants cite to *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), for this proposition, but, as Pattern points out, "*Grupo* said no such thing (and that quotation is not found in *Grupo*)." Reply at 4.  Moreover, the only jurisdictional category in section 1332(a) that allows for U.S. citizens and foreign citizens on the same side of the dispute is section 1332(a)(3), but as

*Grupo* makes clear, a court cannot slice and dice a dual-citizen limited partnership in order to fit within that subdivision. *See Grupo*, 541 U.S. at 578-79.

In conclusion, for the reasons set forth above, this Court finds that section 1332(a)(2) does not furnish grounds for jurisdiction here.

### B. Diversity Jurisdiction Under Sections 1332(a)(1) or 1332(a)(3)

Although Defendants do not invoke sections 1332(a)(1) or 1332(a)(3), the Court nevertheless separately considers — and rejects — those bases for jurisdiction over this matter, consistent with its obligation to independently inquire into subject matter jurisdiction. *See F5 Cap.*, 856 F.3d at 75.  28 U.S.C. § 1332(a)(1), which confers jurisdiction over actions between "citizens of different States," is plainly inapplicable here, because Pattern is also a citizen of a foreign state.  *See, e.g.*, *Metro. Reg'l Ctr.*, 552 F. Supp. 3d at 458 ("Section 1332(a)(1) . . . does not apply where, as here, one party has citizenship other than citizenship of a state.") (collecting cases); *see also Newman-Green*, 490 U.S. at 828 ("In order to be a citizen of a state within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the state.").

Nor does 28 U.S.C. § 1332(a)(3), which applies in actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," assist Defendants.  For 28 U.S.C. § 1332(a)(3) to apply, this Court would need to disaggregate Pattern's foreign-based partners from the corporate entity and construe those partners as "additional parties."  *Metropolitan Regional Center* is instructive in its thorough and reasoned rejection of an identical argument.  *See* 552 F. Supp. 3d at 455-58.  In that case, the plaintiff was a limited partnership that, by virtue of its limited and general partners, was a citizen of New York and of a foreign state.  *Id.* at 453.  Several of the plaintiff's foreign limited partners were also "green card holders domiciled in Texas."  *Id.*  The defendant was "a Texas

corporation with its principal offices in Texas." *Id.* at 453-54. The court rejected the argument that plaintiff's limited partners could be considered "additional parties" for purposes of section 1332(a)(3). *Id.* at 455. In so holding, the court explained that disaggregating a corporate entity for purposes of assessing diversity jurisdiction would run afoul of the Supreme Court's precedents in *Carden v. Arkoma Associates*, 494 U.S. 186 (1990), and *Grupo Dataflux*, 541 U.S. 567. As is discussed at greater length in *Metropolitan Regional Center*, *Carden* and *Grupo Dataflux* "stand for the (somewhat tautological) proposition that, for purposes of Section 1332(a), a 'single artificial entity' party is but one party and that its citizenship — and only its citizenship — matters for purposes of complete diversity." *Metro Reg'l Ctr.*, 552 F. Supp.3d at 456. The Court is persuaded by the reasoning in *Metropolitan Regional Center* and finds that, for the same reasons, section 1332(a)(3) cannot confer jurisdiction over the parties in this matter. *See also IGY Ocean Bay*, 534 F. Supp. 2d at 449 (rejecting argument that corporate entities with dual citizenship could be "treated as aliens to satisfy one element of § 1332(a)(3)'s diversity requirement, but then as domestic citizens to meet the other part of that provision's jurisdictional test").

Defendants' attempt to distinguish *Metropolitan Regional Center* as deciding the jurisdictional question based on the presence of Texas citizens on either side of the dispute misconstrues the facts of the case and the court's holding. According to Defendants, *Metropolitan Regional Center* involved a "partnership whose partners included both foreign citizens and citizens of Texas and New York, while the defendant was a Texas corporation with its principal place of business in Texas," and the "presence of Texas citizenship on both sides of the dispute" therefore "destroyed diversity." Opp. at 11. But *Metropolitan Regional Center* did not involve Texas citizens on either side of the dispute. In arguing otherwise, Defendants again assume that a legal permanent resident's state of domicile is synonymous

with his or her citizenship. For the reasons set forth above, *see supra* p. 9-10, this conflation of "domicile" and "citizenship" is legally erroneous. *Metropolitan Regional Center* therefore did not reject diversity jurisdiction because of a "symmetry of Texas citizenship" on either side of the dispute. Rather, *Metropolitan Regional Center*, like *Windward*, considered the applicability of section 1332(a)(2)'s carveout precluding jurisdiction between U.S. citizens and legal permanent residents domiciled in the same state — a carveout plainly not at issue here. 552 F. Supp. 3d at 459. The court otherwise rejected diversity jurisdiction under sections 1332(a)(1) and 1332(a)(3) because the limited partnership's dual citizenship rendered section 1332(a)'s jurisdictional categories inapplicable. *Id.*[4]

Finally, the Court declines to take a "mix-and-match approach" whereby it holds that some combination of sections 1332(a)(1) and 1332(a)(2) could confer diversity jurisdiction.

---

[4] The Court is unpersuaded by *Bendit v. Canva, Inc.* No. 22-cv-00473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023). In *Bendit*, the plaintiff was a citizen of New York, and defendants were a Delaware corporation with its headquarters and principal place of business in Australia, and an Australian corporation. *Id.* at *2. *Bendit* held that "[e]ven taking into account [the corporation's] dual citizenship in both Delaware and Australia, complete diversity . . . exist[ed] among the parties." *Id.* at *2. The court found that diversity jurisdiction existed under either section 1332(a)(2), because the action involved "'citizens of a state' (namely, New York) against 'citizens or subjects of a foreign state' (Australia)," or under section 1332(a)(3), as an action between "'citizens of different States' (New York and Delaware) 'in which citizens or subjects of a foreign state' (Australia) 'are additional parties.'" *Id.* (first quoting 28 U.S.C. § 1332(a)(2); and then quoting 28 U.S.C. § 1332(a)(3)). *Bendit* involved a corporation, rather than an unincorporated association like the limited partnership at issue here, and Supreme Court precedent forecloses the disaggregation of a limited partnership's members for purposes of diversity jurisdiction. *See, e.g.*, *Grupo Dataflux*, 541 U.S. at 577-80; *Carden*, 494 U.S. at 192-96. *Bendit*, unlike this case, also involved "additional parties" within the meaning of section 1332(a)(3).

The out of circuit decision of *Starr Indemnity & Liability Co. v. Signature Flight Support Co.*, No. 22-cv-00179, 2022 WL 17400956 (D. Nev. Dec. 1, 2022), likewise does not sway the Court. While the *Starr* court held that "complete diversity" existed between a corporate citizen of Texas and New York, and a limited liability company that was a citizen of Delaware, Florida, and the United Kingdom, the court provided no analysis or authority for so holding, and, to the extent it disaggregates members to fall within one of section 1332(a)'s categories, the court runs afoul of *Grupo Dataflux* and *Carden*.

Such a theory would require "slic[ing] and dic[ing] a single-artificial-entity party and mix[ing] and match[ing] different subsections of Section 1332 to exercise jurisdiction over a case that would not otherwise fit within any one of the subsections." *Metro. Reg'l Ctr.*, 552 F. Supp. 3d at 458.  The Court is not aware of any authority that has taken such an approach,[5] and doing so here would be contrary to the statutory text, which enumerates specific jurisdictional categories, none of which standing alone apply to this case.

*      *      *

For the foregoing reasons, the court finds that it lacks subject matter jurisdiction over this case and therefore grants Pattern's motion to remand to state court.  In so holding, the Court reverts to those fundamental principles that govern federal courts' subject matter jurisdiction: principally, that federal district courts are to "construe the removal statute narrowly, resolving any doubts against removability," *Purdue Pharma*, 704 F.3d at 213 (quoting *Lupo*, 28 F.3d at 274), and that federal courts should refrain from "expanding [jurisdiction] by judicial decree," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951)).  Section 1332(a)'s text simply does not provide for jurisdiction over disputes between citizens of a U.S. state on the one side, and an unincorporated entity with dual U.S. and foreign citizenship on the other.[6]

---

[5] *Bendit* states that diversity jurisdiction exists under "either" section 1332(a)(2) "or" 1332(a)(3), and therefore suggests that either ground is independently sufficient to satisfy diversity jurisdiction.  *Bendit*, 2023 WL 5391413, at *2.  To the extent, however, that *Bendit* takes a "slice-and-dice" approach and relies on both provisions to find diversity jurisdiction, it provides no authority for doing so.  For the reasons set forth above, the Court respectfully declines to follow that approach in this case, which involves a limited partnership whose citizenship is derived from its members.

[6] Under Rule 7.1, in any action based on diversity jurisdiction, a party must file a disclosure statement naming and identifying the citizenship of "every individual or entity whose citizenship is attributed to that party or intervenor . . . when the action is filed in or removed to federal court."  Fed. R. Civ. P. 7.1(a)(2), (a)(2)(A).  However, "[t]he rule recognizes that the

14

II.    **Attorney's Fees and Costs**

Finally, Pattern seeks statutorily authorized fees and costs under 28 U.S.C. § 1447(c), asserting that Defendants "had no reasonably objective basis to remove this case in the first place." Dkt. 21 at 13.

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Section 1447(c) does not create an automatic right to fees and costs for a prevailing party or even a presumption that such fees and costs should be awarded when a motion to remand is granted." *Sokola v. Weinstein*, No. 20-cv-00925 (LJL), 2020 WL 3605578, at *18 (S.D.N.Y. July 2, 2020) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 137 (2005)). The statute "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees." *Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin,* 546 U.S. at 140. "In light of these 'large objectives,' the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141 (citation omitted) (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

---

court may limit the disclosure in appropriate circumstances," including "when a party reveals a citizenship that defeats diversity jurisdiction." Fed. R. Civ. P. 7.1(a)(2) advisory committee's note to 2022 amendment. Limiting disclosure is warranted here, where diversity jurisdiction is defeated by the presence of limited partners that Pattern has already disclosed.

only where the removing party lacked an objectively reasonable basis for seeking removal."
*Id.*

"'[A]lthough the [Defendants'] arguments for removal are ultimately unsuccessful,' the Court cannot say that they were frivolous and lacked color." *Sokola*, 2020 WL 3605578, at *18 (quoting *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 421 (S.D.N.Y. 2020)). While Plaintiff suggests that *Metropolitan Regional Center* foreclosed jurisdiction here, *Metropolitan Regional Center* is not binding on the Court and its analysis of section 1332(a)(2)'s application to an unincorporated business association with dual citizenship was, as Defendants note, dicta. Under these circumstances, "it cannot be said that Defendants' position is so wholly frivolous or unreasonable as to warrant an award of costs and fees." *PCVST Mezzco 4, LLC v. Wachovia Bank Com. Mortg. Tr. 2007-C30*, No. 14-cv-06023 (AJN), 2015 WL 153048, at *8 (S.D.N.Y. Jan. 12, 2015). Nor does the court have any basis to believe that "removal of the action was 'merely an attempt to abuse or harass plaintiff, or to force plaintiff to incur unnecessar[y] . . . expenses.'" *Koninklijke Philips Elecs. v. Digit. Works, Inc*., 358 F. Supp. 2d 328, 335 (S.D.N.Y. 2005) (quoting *Mastec Latin Am. v. Inepar S/A Industrias e Construcoes*, No. 03-cv-09892 (GBD), 2004 WL 1574732, at *4 (S.D.N.Y. July 13, 2004)). Therefore, finding that there was "an objectively reasonable basis" for Defendants' removal to federal court, *Martin*, 546 U.S. at 141, the Court exercises its discretion not to award attorneys' fees and costs in this matter.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. Defendants' motion to stay the proceedings is DENIED as moot. The Clerk of Court is respectfully

directed to terminate the motions at Dkts. 11, 15, and 20.  The action is REMANDED to the

Supreme Court of New York, County for New York.

Dated: April 15, 2025
      New York, New York

                            SO ORDERED.

                            JENNIFER L. ROCHON
                            United States District Judge